IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  Stephany Webster, | ) | |
|     Plaintiff, | ) | |
|     v. | ) | Case No. **22-cv-00239-TCK-SH** |
| | ) | |
| 1.  Fairway Management Inc. | ) | |
| 2.  Walnut Park Manor, LP. | ) | |
| 3.  JES Holding, LLC. | ) | |
|     Defendants. | ) | |

## COMPLAINT

## INTRODUCTION

1.     Plaintiff, Stephany Webster, brings this action against the Defendants, Fairway Management, Inc., JES Holdings, LLC., and Walnut Park Manor, LP., for violations of the **Fair Housing Act** and the **Fair Housing Amendments Act, 42 U.S.C.A. § 3601**, **et seq**., the **Rehabilitation Act of 1973, § 504**, **29 U.S.C. § 794**, **the Violence Against Women Act, 34 U.S.C.A. § 12491**, the **Oklahoma Discrimination in Housing Act** and the **Oklahoma Anti-Discrimination Act, 25 Okla. Stat. § 1401, et. seq**., the **Oklahoma Consumer Protection Act, 15 Okla. Stat. § 751, et seq.**, for fraud in violation of the **Oklahoma Contract Act, 15 Okla. Stat. §1, et seq.**, for common law malicious prosecution, and for common law breach of contract.

2.     The Defendants denied and delayed necessary reasonable accommodations to the Plaintiff, a person, known to them as a person with disabilities, in violation of the **Fair Housing Act, the Oklahoma Discrimination in Housing Act,** and **the Rehabilitation Act of 1973, § 504**.

1

3.     The Defendants have made discriminatory statements that violate the **Fair Housing Act**, the **Oklahoma Discrimination in Housing Act**, and the **Rehabilitation Act of 1973, § 504** because of the Plaintiff's sex and disability.

4.     The Defendants retaliated against the Plaintiff for exercising guaranteed civil rights based upon her membership in one or more protected classes in violation of the **Fair Housing Act**, the **Rehabilitation Act of 1973**, the **Violence Against Women Act,** the **Oklahoma Discrimination in Housing Act**, and the **Oklahoma Anti-Discrimination Act**.

5.     The Defendants violated the **Oklahoma Consumer Protection Act** and the **Oklahoma Contract Act**, by engaging in fraud, and unfair and deceptive trade practices in respect to the collection and processing of the Plaintiff's rent, and by fraudulently, unfairly, and deceptively demanding the additional payment of utilities from the Plaintiff that were promised to be paid by the Defendants.

6.     The Defendants have and are violating the **Violence Against Women Act** by making housing unavailable to the Plaintiff because she is a victim and survivor of domestic violence.

7.     The Defendants maliciously prosecuted the Plaintiff by maliciously filing lawsuits against her, without probable cause, to the detriment of the Plaintiff.

8.     The Defendants breached the lease agreement by engaging in each of the aforementioned actions.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over the Plaintiff's claims brought under federal law pursuant to **28 U.S.C. §§ 1331**, **1343**, and **2201** and jurisdiction over state law claims pursuant to **28 U.S.C. § 1367**.

10.     This Court has personal jurisdiction over the Defendants because the Defendants conduct business in the Northern District of Oklahoma, in Creek County, the subject contract was made and expected to be performed in the Northern District of Oklahoma, and the Plaintiff's claims for relief arise from the Defendants' discriminatory conduct and breach of contract that occurred in the Northern District of Oklahoma, in Creek County.

11.     Venue is proper in this judicial district pursuant to **28 U.S.C. § 1391 (b)** because all or a substantial part of the acts and omissions of the Defendants giving rise to this action occurred in the Northern District of Oklahoma.

## PARTIES

12.     Plaintiff, Stephany Webster is a 69-year-old Caucasian female senior citizen. She has resided in the Walnut Park Manor Apartments located in Creek County, Sapulpa, Oklahoma since February 2017.  She is a person with numerous physical and mental disabilities. Ms. Webster is also a survivor of domestic violence. She receives rental assistance from the Oklahoma Housing Finance Agency (OHFA) to assist her with the payment of her rental obligations. Ms. Webster also receives a utility allowance to assist her with the payment of utilities at Walnut Park Manor Apartments.

13.     Defendant, Walnut Park Manor, LP (WPM). is an Oklahoma limited partnership. It owns Walnut Park Manor Apartments (Apartments)- a fifty-unit housing complex, for Seniors 62 years old and older. It is located at 944 West Teel Road, Sapulpa, Oklahoma, in Creek County in the Northern District of Oklahoma. It is not tribal property. Walnut Park Manor Apartments is a Low-Income Housing Tax Credit property, that receives tax credit benefits pursuant to the Internal Revenue Code, Section 42. It also operates with other federal financial assistance. As of May 2022, Walnut Park Manor, L.P. advertises Walnut Park Manor on www.apartments.com to include the utilities of water, sewer, and trash as provided below:



14.     Defendant, Fairway Management, Inc. (FWM) is a Missouri Corporation. It is the agent of Walnut Park Manor, LP and manages the daily operations at the Walnut Park Manor Apartments. All correspondence provided to the tenants, including the lease, bear the name and logo of FWM. Additionally, FWM manages at least twenty-five additional properties and a total of 12,200 units located in low-income housing complexes

that receive federal financial assistance. FWM has more than twenty-five years of experience with managing low-income housing properties.

15.    Defendant, JES Holdings, LLC. (JES), is a Missouri limited liability company and is either or both the parent company of Defendant FWM and/or a partner and joint venturer with FWM. FWM and JES are agents of each other, and WPM in the management operations of Walnut Park Manor Apartments. JES has 600 employees and several additional companies under its umbrella through which it provides a variety of management services to low-income housing complexes dedicated to providing housing services to seniors and persons with disabilities.

## FACTUAL BACKGROUND

### *Mrs. Webster's Disabilities*

16.    Plaintiff, Stephany Webster is a 69-year-old Caucasian female senior citizen. She has resided in the apartments since February 2017.  She is a person with numerous physical and mental disabilities. Specifically, *inter alia*, Ms. Webster suffers from severe heart problems, neurological problems, vision problems, PTSD, and anxiety.

17.    She disclosed her status as a person with a disability to the Defendants during her tenancy. At various times throughout her tenancy, the manifestations of her disabilities were visibly apparent to the Defendants.

18.    Because of her age and numerous disabilities, Ms. Webster is not able to work or to otherwise earn income from employment.

19.    Her sole income derives from her government benefits which she receives once monthly.

20.     Because her sole income derives from government benefits of less than $900 monthly, Ms. Webster qualifies to participate in the federally financially assisted low-income rental assistance opportunities offered by the Defendants' housing program, and she has so qualified since she applied for housing at the apartments.

### *Ms. Webster's status as a victim and survivor of domestic violence*

21.     Ms. Webster survived child abuse at the hands of her father.

22.     She married very young in life and began her family. Her first husband was very domestically violent to her. He left her, and they eventually divorced.

23.     After the divorce, Ms. Webster later remarried. Unfortunately, during her second marriage of more than thirty years, Ms. Webster endured constant physical, financial, and mental domestic violence, and medical abuse, at the hands of her second husband.

24.     To escape the domestic violence, Ms. Webster divorced her second husband and fled from her home State, leaving behind her adult children and grandchildren. She sought shelter and safety in Oklahoma. She has not seen her family in over a decade.

25.     Ms. Webster worked with several organizations that assist abused persons with escaping domestic violence to assist her with leaving the abusive marriage and distancing herself from her former abuser. The outcome of those efforts resulted in her relocation to Oklahoma.

26.     Although Ms. Webster received a judgment that awarded her spousal support in her second divorce, her former spouse has refused to pay her any money under that order since 2014.

27.    Since she has fled her home State for her safety, Ms. Webster has not enforced the order to prevent and to avoid interaction with her former abuser.

### *Ms. Webster's Tenancy at Walnut Park Manor*

28.    Ms. Webster moved into the apartments in 2017.

29.    Ms. Webster was drawn to the apartments because they were advertised as an all bills paid tax credit property – inclusive of the water and sewer utilities. This feature was attractive to her because of her very low-income.

30.    After Ms. Webster moved in, the property management staff did not properly complete the necessary paperwork to enable her to participate in its federal housing assistance program.

31.    After almost six months, the property management staff finally correctly processed Ms. Webster's paperwork.

32.    She qualified for rental assistance from the Oklahoma Housing Finance Agency (OHFA) to assist her with the payment of her rental obligations. Ms. Webster also receives a utility allowance to assist her with the payment of utilities at Walnut Park Manor Apartments. She also qualified for additional assistance from the United States Department of Housing and Urban Development (HUD) to lower her rent obligation.

33.    As a result of all the rental assistance for which she qualified, Ms. Webster's rent obligation was less than $100 monthly.

### *2019 Recertification*

34.    In 2018, prior to her recertification, Ms. Webster underwent surgery for her eyes to assist with ameliorating the effects of her visual disability.

35.     She notified the Defendants that she would not be able to complete her recertification paperwork due to her eye surgery and requested additional time.

36.     Ms. Webster's visually impaired status was readily and visibly apparent to the Defendants' property management staff.

37.     The Defendants demanded that she complete the paperwork despite her inability to see or read the paperwork.

38.     Ms. Webster requested copies of the paperwork to take with her to have someone else assist her with reading the paperwork, and the Defendants refused to allow her to do so.

39.     In her visually impaired state, Ms. Webster attempted, as best as she could, to comply with the recertification demands of the Defendants.

40.     In her review of the documents, Ms. Webster identified several materially false or inaccurate statements made by the Defendants in her recertification documents. Accordingly, she refused to sign the documents until the Defendants corrected the documents because the documents must be signed under the penalty of perjury under law.

41.     As part of the recertification process, Ms. Webster produced bank statements showing the income that she received from the government.

42.     The Defendants demanded that Ms. Webster produce additional proof that she was not receiving income from her former spouse and threatened to contact him directly to obtain the information.

43.     The Defendants were aware that Ms. Webster was a victim and survivor of domestic violence, and that her former spouse was her abuser, when they threatened to contact her ex-husband to get the information from him.

44.     The threat of the Defendants to contact Ms. Webster's former spouse caused Ms. Webster great anxiety and great emotional distress, because she is a victim and a survivor of domestic violence at the hands of the former spouse.

45.     The Defendants did not inform Ms. Webster of other less aggressive ways that she could prove that she was not receiving the ordered spousal support.

46.     As a result of the threat to call her former spouse, Ms. Webster went to the police station to inquire about obtaining a restraining order against the Defendants' property manager.

### Ms. Webster's Second Reasonable Accommodation Request

47.     After Ms. Webster recertified for 2019, the Defendants requested that she recertify again for 2019 later that year.

48.     Ms. Webster did not have a household size or income change that would have triggered the requirement to redo the recertification process, so she refused.

49.     After Ms. Webster refused to complete additional recertification documents for the 2019 year, the Defendants issued her a notice of nonrenewal of tenancy.

50.     Ms. Webster retained counsel to assist her with retaining her housing.

51.     Her counsel, on her behalf, made a request for a reasonable accommodation to allow Ms. Webster to meet with the Defendants to discuss the nonrenewal notice.

52.    She explained, on behalf of Ms. Webster, that Ms. Webster completed the recertification process earlier that year. However, if she was mistaken, she requested an accommodation to allow Ms. Webster to recertify after the meeting and to retain her housing.

53.    The Defendants ignored the request.

54.    In September 2019, to oppose the Defendants' refusal to respond to her requested accommodation, Ms. Webster, by counsel, filed a civil action to obtain a restraining order from the district court in Creek County, to restrain the Defendants from continuing to discriminate against her. **Webster v. Walnut Park Manor Apartments, Creek County District Court Case Number CV-2019-00127**.

55.    The district court granted Ms. Webster's application for the temporary restraining order on September 23, 2019.

56.    Ms. Webster continued to tender her rent (of approximately $100) each month to the Defendants after the restraining order hearing and the granting of the temporary restraining order.

57.    During that time, limited discussions occurred about Ms. Webster possibly moving. However, she was unable to move because she could not afford to do so.

58.    The Defendants refused to cash her rent checks through May 2020.

59.    Ms. Webster did not spend her rent money during that time.

*2020 Eviction action*

60.     On March 13, 2020, the Defendants filed an eviction action, against Ms.

Webster, in the Creek County district court for non-payment of rent totaling $1,176.00.

**Walnut Park Manor v. Webster, Creek County District Court Case Number SC-**
**2020-194**.

61.     Ms. Webster did not owe any rent to the Defendants at that time.

62.     The State district court dismissed the Defendants' action for unpaid rent, and

the underlying claimed debt, after the Defendants failed to appear in court at the hearing.

63.     Having to appear in court for the eviction action severely affected Ms.

Webster and exacerbated her heart condition. She experienced heart palpitations. After the

hearing, an ambulance transported her to the hospital, where she was admitted for

monitoring and recovery from the trauma of the court experience.

64.     Within days of the dismissal of the eviction action, and the underlying debt,

the Defendants deposited each old rent check that it received from Ms. Webster for the

months that it claimed that she had not paid rent.

65.     Ms. Webster requested her bank to stop payment on each of the checks since

the district court determined that she did not owe rent for the claimed months.

66.     She paid twenty-five dollars to stop payment on the rent checks.

*2021 Recertification*

67.     In or around December 2020, the Defendants finally agreed to recertify Ms.

Webster for housing at Walnut Park Manor.

68.     On December 31, 2020, the Defendants, in a not less than five-hour session, recertified Ms. Webster for the 2021-2022 annual lease period.

69.     The Defendants also forced her to complete the recertification paperwork for the annual periods of 2018, 2019, and 2020 at that same time.

70.     Normally, tenants complete the recertification paperwork once annually for each one-year tenancy.

71.     At or near that time, the Defendants admitted that they did not really need to contact Ms. Webster's ex-spouse to obtain verification that she did not receive spousal support from him. The Defendants admitted that a letter from the attorney who assisted Ms. Webster with her efforts to escape her abuser was sufficient. Ms. Webster submitted the letter to the Defendants.

72.     The Defendants never informed Ms. Webster that she could just submit the letter.

73.     Because the Defendants forced Ms. Webster to complete recertification for four years in one setting, her daily medicinal regimen was disrupted, and she went without food for half a day.

74.     Additionally, due to the Defendants intentional delay in recertifying Ms. Webster, she lost her HOME funds to the unit and her rental rate increased by more than $60 per month.

*2021 Eviction filing*

75.     Pursuant to her 2021 lease, Ms. Webster paid rent as agreed. The Defendants received and cashed each payment that it received from Ms. Webster from the beginning of her 2021 lease through September 23, 2021.

76.     On September 23, 2021, the Defendants filed a second eviction action against Ms. Webster alleging $949.84 for unpaid rent. **Walnut Park Manor v. Webster, Creek County District Court Case No. SC-2021-431**.

77.     Ms. Webster denied that she owed anything for unpaid rent.

78.     On November 10, 2021, the State district court heard the parties on the matter.

79.     At the hearing, Ms. Webster produced a notarized and sworn bank statement that showed each of the Defendants' monthly withdrawals of the rent from her account.

80.     At the hearing, the Defendants then claimed that the "rent" that it alleged as owed was for unpaid water bills.

81.     The Defendants admitted that they had not given Ms. Webster notice of a duty to pay the water bills or demanded payment for water bills from her before filing the eviction action.

82.     After a hearing on the merits, the State district court granted a judgment favoring Ms. Webster and determined that she did not owe any rent to the Defendants.

83.     The State district court denied the Defendants' claim for all monetary relief including its claim that Ms. Webster owed money for water bills.

84.    Ms. Webster suffered great anxiety and emotional distress as a result of having to go to court a second time and facing the threat of displacement.

### *2022 Notice of Lease Termination*

85.    On March 31, 2022, Ms. Webster signed the lease agreement for January 1, 2022 through December 31, 2022.

86.    On May 6, 2022, the Defendants presented Ms. Webster with a water and sewer bill from February 2022-March 2022.

87.    Ms. Webster has never had to pay a water bill during her tenancy.

88.    The Defendants advertise the complex to include the water, sewer, and trash.

89.    Ms. Webster did not pay the water and sewer bill and disputed that she owed it.

90.    Ms. Webster also maintained that she did not receive written notification from the OHFA informing her that she would need to pay the water and the sewer bills.

91.    On May 16, 2022, the Defendants mailed Ms. Webster a notice of lease termination because she did not pay the $54 water and sewer bill upon demand.

92.    Pursuant to the notice, Ms. Webster lease would terminate on June 1, 2022. The Defendants demanded possession of the unit.

### **INJURY TO THE PLAINTIFF**

93.    As a result of the Defendants' actions as described above, the Plaintiff suffered and continues to suffer irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and deprivation of her rights to equal

housing opportunities because of her disabilities and her sex. She has suffered harm in excess of $100,000.

94.     By engaging in the unlawful conduct described above, the Defendants acted intentionally and maliciously with callous and reckless disregard of the federally and statutorily protected rights of the Plaintiff. Therefore, this Court must award punitive damages to Ms. Webster to punish the Defendants for their conduct and to make an example of them to others.

95.     A monetary judgment alone is inadequate to fully relieve Ms. Webster of the injuries that she has sustained because of the untenable conduct of the Defendants. She seeks injunctive relief, pursuant to the civil rights laws, to enjoin the Defendants from continuing to engage in the unlawful housing discrimination.

96.     Additionally, the conduct of the Defendants is unconscionable as a matter of law. Therefore, this Court must award Ms. Webster civil penalties against the Defendant, pursuant to the **Oklahoma Consumer Protection Act**, for each violation of the Act. Because of the egregiousness of the Defendants' conduct, this Court must award to Ms. Webster the maximum penalty for each violation of the Act.

## COUNT I

### *Violations of the Fair Housing Act, 42 U.S.C. § 3604 (a), (b), and (c)*

97.     The Plaintiff repeats her assertions of facts contained in paragraphs 1 through 92 above as if fully set forth herein.

98.     Under the **Fair Housing Act**, **42 U.S.C. § 3604 (a)**, and the facts pleaded herein, the Defendants have unlawfully made and are making housing unavailable to Ms.

Webster, in part, on the basis of sex, since the Defendants made housing unavailable to her because she is a victim and survivor of domestic violence.

99.    Under the **Fair Housing Act, 42 U.S.C. § 3604 (b)**, and the facts pleaded herein, the Defendants have unlawfully subjected Ms. Webster to different terms, conditions, and privileges of rental, because of her sex, by conditioning her housing upon direct contact with her abuser, when such was not a term or condition for continued rental.

100.    Additionally, under the **Fair Housing Act**, **42 USC § 3604 (c)**, and the facts pleaded herein, the Defendants have unlawfully made statements to the Plaintiff, with respect to her rental, that indicated a preference, limitation, and discrimination because of her sex and disability (handicap).

## COUNT 2

### *Violation of 42 U.S.C. § 3604 (f) (1) (A) and (C), and (3) (B).*

101.    The Plaintiff repeats her assertions in paragraphs above as if fully set forth herein in paragraphs 1 through 92 above as if set out in full herein.

102.    Under the **Fair Housing Amendments Act of 1988**, **42 U.S.C. § 3604 (f) (1) (A)**, and the facts pleaded herein, the Defendants have engaged in an unlawful discriminatory housing practice by refusing to rent, to negotiate for rental, and otherwise making housing unavailable to the Plaintiff because of her handicap (disability).

103.    Under the **Fair Housing Amendments Act of 1988, 42 U.S.C. § 3604 (f) (1) (C)**, and the facts pleaded herein, the Defendants have engaged in an unlawful discriminatory housing practice by subjecting the Plaintiff to different terms, conditions, and privileges of rental because she is a person with a disability.

104.    Under the **Fair Housing Amendments Act of 1988, 42 U.S.C. § 3604 (f) (3) (B),** and the facts pleaded herein, the Defendants have engaged in an unlawful discriminatory housing practice by refusing to grant the Plaintiff's requested reasonable accommodations when such were necessary to afford her an equal opportunity to use and to enjoy her dwelling at the apartments.

### COUNT 3

### *Violation of the 42 U.S.C. § 3617*

105.    The Plaintiff repeats all previous assertions of fact as raised in paragraphs 1 through 92 as if set fully set forth herein.

106.    Under the **Fair Housing Act, 42 U.S.C. § 3617**, and the facts set forth above, the Defendants engaged and are engaging in unlawful housing discrimination by their repeated acts of harassment, threats, intimidation, and coercion to the Plaintiff because she exercised rights protected under the **Fair Housing Act**, and under the **Fair Housing Amendments Act**.

### COUNT 4

### *Violations of the Oklahoma Discrimination in Housing Act and Anti-Discrimination Act, 25 Okla. Stat. Ann. §§ 1452 (A) (1), (3), (15) (a) (1), (b) (1), (16) (b), and 1601 (1).*

107.    The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1 through 92 as if set out fully herein.

108.    Under the Oklahoma Discrimination in Housing Act, **25 Okla. Stat. Ann. §§ 1452 (A) (1), (3), (15) (a) (1), (b) (1), (16) (b)**, the Defendants' actions alleged above, constitute prohibited housing discrimination on the basis of disability and sex.

109.    Under the Oklahoma Anti-Discrimination Act, **25 Okla. Stat. Ann. § 1601 (1)**, the Defendants' conduct also constitutes unlawful discrimination because the Plaintiff opposed a discriminatory practice and filed a complaint to stop the conduct.

## COUNT 5

### *Violation of the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794*

110.    The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1through 92 as if set out fully herein.

111.    The Defendants, as recipients of federal financial assistance, are required to follow the **Rehabilitation Act of 1973, § 504**, to provide qualified disabled individuals an equal opportunity to participate in its housing program.

112.    At all times during her occupancy, and presently, Ms. Webster qualified and qualifies to participate in the Defendants' federally financially assisted housing program.

113.    The Defendants have denied her an equal opportunity to participate in its federally financially assisted housing program by refusing to grant her requested reasonable accommodation, and by retaliating against her for exercising that protected right.

114.    Under the **Rehabilitation Act of 1973, § 504**, the Defendants' actions alleged above, inasmuch as they were taken in respect to the Plaintiff's disability, constitute unlawful discrimination on the basis of disability in violation of **§ 504**.

## COUNT 6

### *Violation of the Violence Against Women Act (VAWA), 34 U.S.C.A. § 12491*

115.    The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1 through 92 as if set out fully herein.

116.    The Defendants, as recipients of federal financial assistance and housing providers of a federally financially assisted housing program and complex, are covered under the provisions of the Violence Against Women's Act (VAWA).

117.    Ms. Webster, as a victim and survivor of domestic violence, is a covered person under the VAWA.

118.    The VAWA prohibits conduct by a covered housing provider and covered housing program that makes housing unavailable to a covered person because the person is a victim and survivor of domestic violence.

119.    The VAWA also prohibits retaliation against a person for opposing a discriminatory act that violates the VAWA.

120.    The Defendants' conduct, as set forth herein, violates the VAWA.

## COUNT 7

### *Breach of Contract*

121.    The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1 through 92 above as if set out fully herein.

122.    The Defendants' actions alleged above, constitute breaches of contract, specifically the lease agreement, since the lease prohibits the actions alleged above.

123.    Ms. Webster has been harmed, as set out above, as a direct result of the Defendants' conduct.

124.    Ms. Webster is entitled to damages, including a reasonable attorney fee for the prosecution of this case.

## COUNT 8

### *Malicious Prosecution*

125.    The Plaintiff repleads and incorporates here all foregoing allegations of facts pleaded in paragraphs 1 through 92 above as if set out fully herein.

126.    "[I]f  the elements which  comprise malicious prosecution are  met  and material  damages  are  demonstrable,  a  plaintiff may  prevail  upon  this  cause  of action without having to prove special injury or grievance." Greenberg v. Wolfberg, 1994 OK 147, 890 P.2d 895, 900–01

127.    Under Oklahoma law, the elements for a malicious prosecution claim are: the Defendants "(1) initiated the proceedings embraced within the multi-componential predicate and these proceedings were (2) brought *without* probable cause, (3) motivated by malice, (4) terminated in the plaintiff's favor and (5) damaging to the plaintiff. Greenberg v. Wolfberg, 1994 OK 147, 890 P.2d 895, 901–02

128.    The  facts,  as  provided  above  support  a  cause  of  action  for  malicious prosecution favoring the Plaintiff.

## COUNT 9

### *Fraud*

129.    The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1 through 92 as if set out fully herein.

130.    Pursuant to Oklahoma contract law, "Fraud is either actual or constructive."

**15 Okla. Stat. § 57**.

131.    Pursuant to Oklahoma law,

Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.

2. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true.

3. The suppression of that which is true, by one having knowledge or belief of the fact.

4. A promise made without any intention of performing it; or,

5. Any other act fitted to deceive.

**15 Okla. Stat. § 58**.

132.    Again, under Oklahoma law,

Constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,

2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

**15 Okla. Stat. § 59**.

133.     The facts set forth above support Ms. Webster's claim for fraud against the Defendants.

## COUNT 10

### *Violation of the Oklahoma Consumer Protection Act, 15 Okla. Stat. § 751, et seq.*

134.     The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1 through 92 as if set out fully herein.

135.     The **Oklahoma Consumer Protection Act, 15 Okla. Stat. § 752 (1)** defines a person as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity."

136.     The **Oklahoma Consumer Protection Act, 15 Okla. Stat. § 752 (2)** defines a consumer transaction as, "the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented."

137.     The Defendants are the contracting party to the lease agreement of the Plaintiff.

138.     The Defendants own and operate the Walnut Park Manor Apartments in which the Plaintiff lives.

139.    The Defendants advertised to the Plaintiff and to the public that the water and the sewer utilities are included in the cost of the rental of the property.

140.    Despite that advertisement and representation, the Defendants are demanding that Ms. Webster pay those utilities for continued occupancy of her unit.

141.    The Defendants terminated Ms. Webster's tenancy because she legally disputed the Defendants' demand that she must pay the water and sewer bills.

142.    The Defendants refused to cash Ms. Webster's rent checks for multiple months from 2019-2020 and then sued her in 2020 for non-payment of rent, for more rent than she was even required to pay for the claimed period, and for possession of her unit.

143.    After the district court denied the Defendants' unlawful claim for rent and dismissed the case and the monetary demand, the Defendants engaged in an unfair collection practice by depositing Ms. Webster's previously tendered rent checks.

144.    The Defendants accepted Ms. Webster's rent checks for multiple months in 2021 and then, in 2021, the Defendants sued her for non-payment of rent.

145.    The Defendants knew or should have known that they did not have a legal basis to seek a judgment for rent against the Plaintiff in any of the cases.

146.    The Defendants knew that when they issued notice of lease termination that the Plaintiff had in fact not engaged in any conduct that violated the lease or the occupancy rules.

147.    Pursuant to the **Oklahoma Consumer Protection Act, 15 Okla. Stat. § 753 (20)**, "A person engages in a practice which is declared to be unlawful under the Oklahoma

Consumer Protection Act when, in the course of the person's business, the person: 20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title."

148.    The **Oklahoma Consumer Protection Act, 15 Okla. Stat. § 752 (13)** defines a Deceptive Trade Practice as, "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral."

149.    The **Oklahoma Consumer Protection Act, 15 Okla. Stat. § 752 (14)** defines an Unfair Trade Practice as, "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

150.    The Defendants violated the **Oklahoma Consumer Protection Act** by fraudulently and falsely advertising that the water and sewer utilities were included in the rent. This was an unfair and deceptive trade practice upon which Ms. Webster relied to her detriment.

151.    In the alternative, the Defendants violated the **Oklahoma Consumer Protection Act** by unfairly and deceptively demanding that Ms. Webster pay the water and sewer utilities when such were not a requirement for continued occupancy at the premises.

152.    The Defendants violated the **Oklahoma Consumer Protection Act** by issuing unlawful, unfair, and deceptive termination notices. The Defendants did so with the expectation of misleading and forcing the Plaintiff to vacate her unit to her detriment. The

intended result was that the Plaintiff would lose her housing, housing assistance, and become homeless.

153.   The Defendants violated the **Oklahoma Consumer Protection Act** by unfairly and deceptively filing court process to obtain money judgments against the Plaintiff for rent that she did not owe. The Defendants also violated the Act by unfairly and deceptively filing court process to have the Plaintiff removed from a dwelling of which she is a lawful tenant. The Defendants' conduct was misleading, immoral, unethical, oppressive, unscrupulous, and substantially injurious to the Plaintiff.

154.   The Defendants violated the **Oklahoma Consumer Protection Act** by unfairly filing court process to have the Plaintiff divested of possession of a unit of which she was a lawful tenant. The Defendants' conduct was immoral, unethical, oppressive, unscrupulous, and substantially injurious to the Plaintiff.

155.   The Defendants violated the **Oklahoma Consumer Protection Act** by unfairly and deceptively filing court process against the Plaintiff to obtain a judgment for rent and court costs. The Plaintiff tendered rent each month, and the Defendants accepted it. The Defendants' conduct was deceptive, immoral, unethical, oppressive, unscrupulous, and substantially injurious to the Plaintiff.

156.   The conduct of the Defendants is unconscionable, as a matter of law, because the Defendants knowingly or with reason to know, took advantage of a Ms. Webster, a consumer reasonably unable to protect her interests because of her age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar fact. **15 Okla. Stat. § 761.1 (B)**.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays:

A.    That the Defendants be ordered to take appropriate affirmative actions to ensure that the activities complained of are not engaged in again by them or any of their agents;

B.    That the Court find that the Defendants have violated the Fair Housing Act, the Fair Housing Amendments Act, the Oklahoma Discrimination in Housing Act, and the Oklahoma Anti-Discrimination Act as set forth above.

C.    That the Court find that the Defendants have violated the Rehabilitation Act of 1973, § 504, as set forth above.

D.    That the Court find that the Defendants have violated the Violence Against Women Act as set forth above.

E.    That the Court find that the Defendants, through their actions, have breached their contract with the Plaintiff.

F.    That the Court find that the Defendants have maliciously prosecuted the Plaintiff as set forth above.

G.    That the Court find that the Defendants have committed fraud, as set forth above.

H.    That the Defendants, their agents, employees, and successors be permanently enjoined from discriminating on the bases of sex and handicapped/disabled status against any person in violation of the Fair Housing Act of 1968, as amended, the Fair Housing

Amendments Act of 1988, the Rehabilitation Act of 1973, Section 504, the Violence Against Women Act, and the Oklahoma Housing in Discrimination Act;

I.      That appropriate compensatory, statutory, nominal, and punitive damages be awarded to the Plaintiff in an amount appropriate to proof at trial, pursuant to the foregoing statutes;

J.      That the Court find that the Defendants violated the Oklahoma Consumer Protection Act, that such conduct was unconscionable, and award the Plaintiff her actual damages and the civil penalties in an amount not less than $2,000 per occurrence.

K.      That the Plaintiff be awarded her costs and reasonable attorney's fees in this action; and

L.      That the Plaintiff be awarded such other and further relief that the Court deems just and proper.

## JURY TRIAL DEMANDED

Trial by Jury is demanded on all issues.

Dated: June 1, 2022

Respectfully submitted,

*Attorney for the Plaintiff,*
*Ms. Stephany Webster*

s/ Teressa L. Webster
Teressa L. Webster OBA #30767
LEGAL AID SERVICES OF OKLAHOMA, INC.
530 Court Street
Muskogee, Oklahoma 74401
Telephone:    (918) 683-5681
Facsimile:     (918) 683-5690
Email: Teressa.Webster@laok.org

27